JOSEPH GREENTANER and GEORGE PEARSON, Respondents, *v.* THE CONNECTICUT FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.

Fourth Department, July 2, 1918.

Insurance — fire insurance — assignment of policy — validity of parol agreement of agents to continue policy in force until execution of consent — notice of termination of agency — presumption of continuance of agency — burden of proof — oral assignment of policy — evidence.

Where upon the transfer of real estate the insurer's consent was not indorsed upon the policy, a parol agreement by the general agents of the insurer to continue the policy in force until consent slips could be procured and attached thereto is valid.

Such an agreement by the general agents through whom the policy had been issued is binding upon the insurer, although they had ceased to be agents but had given no notice of the termination of their agency.

A general insurance agency shown to have existed for many years is presumed to continue until the contrary appears.

Where an insurer, sued upon a policy, seeks to avoid liability upon the ground that an agreement to continue the policy in force until a consent slip to its assignment was attached, was made by its general agents after they had ceased to be such, it has the burden of showing that the insured had knowledge of the termination of the agency, or had such information as would be sufficient to give a person of ordinary prudence notice.

The assignment of an insurance policy need not be in writing.

Where an insurance policy is produced by the assignees and placed in evidence by them, it may be inferred that it had been transferred.

FOOTE, J., dissented, with memorandum.

APPEAL by the defendant, The Connecticut Fire Insurance Company of Hartford, Connecticut, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Genesee on the 27th day of October, 1917, upon the decision of the court after a trial before the court without a jury.

*Vernon Cole,* for the appellant.

*Russell L. Kinsey,* for the respondents.

DE ANGELIS, J.:

The action was to recover a loss upon a fire insurance policy, in the New York standard form, dated July 1, 1915, to run one year, issued by the defendant to one Solomon S. Lyman, to cover a livery barn in the city of Batavia, N. Y.

The complaint alleges that Lyman sold and conveyed the property to the plaintiff Joseph Greentaner on or about November 1, 1915, and thereupon, with due notice to and the consent of the defendant, assigned and transferred the policy to Greentaner.

The answer puts in issue the assignment of the policy, either with the consent of the defendant or otherwise, and alleges that the policy became void under the provisions thereof both as to Lyman and Greentaner by reason of the conveyance of the property by Lyman to Greentaner.

There was attached to the policy a mortgagee clause in favor of the plaintiff George Pearson, who holds a mortgage on the property for more than the amount of the indemnity provided for in the policy. The building was consumed by fire on the 20th day of November, 1915. Proofs of loss were furnished to the defendant but the loss was not paid.

The defendant concedes that the plaintiff Pearson, as mortgagee, is entitled to recover by the terms of the policy the amount of the loss, to wit, $1,000, with interest from February 26, 1916, but insists that upon the payment by the defendant to him of the recovery, it should be subrogated to his rights in the mortgage *pro tanto*.

Sherwin & Sherwin, insurance agents in Batavia, were the agents of the defendant through whom this policy was issued.

Findings Nos. 6, 7 and 9, made by the trial court, are as follows:

" 6. That some days prior to the 1st day of November, 1915, the attorney for the plaintiff, Greentaner, had a conversation with Mr. Sherwin, Sr., in which conversation said Sherwin stated to the plaintiffs' attorney the amount of insurance on the said property which his agency held, giving him a list thereof including the policy in suit and further stated that there would be no objection to a transfer of the insurance to Mr. Greentaner in case he became the purchaser of the said real estate,

" 7. That on the 1st day of November, 1915, said Solomon S. Lyman, the insured under the said policy, duly sold and conveyed by warranty deed to the plaintiff, Joseph Greentaner, the said premises containing the buildings insured by the said policy, and also sold and assigned in connection therewith all his right, title and interest as owner of the said policy, to the said plaintiff, Joseph Greentaner, who thereupon by his duly authorized agent and attorney, notified the said firm of Sherwin and Sherwin of the transfer of said property and of the said policy of insurance and requested the consent of the said defendant to said assignment of the policy which assignment was on the same date consented to by said agents on behalf of the said defendant but that no entry or endorsement of said assignment and consent to transfer of the policy was made upon the policy itself for the reason that the said policy was then in the possession of George Pearson who was not a resident of the said city of Batavia and said Sherwin said the absence of the said policy would make no difference and that he would see that the proper consent was made and the company notified."

" 9. That on the first day of November, 1915, and at the time when the consent to the transfer of said policy was given by the said Sherwin, said Sherwin stated to Mr. R. L. Kinsey acting for the plaintiff in that behalf that he would have slips covering said consent mailed to the insured and mortgagee who are the plaintiffs herein but it does not appear by the evidence as to whether or not the said slips were mailed as agreed upon."

On the day of the execution and delivery of the deed of the real estate, to wit, November 1, 1915, Kinsey testified that he talked with Mr. Sherwin over the telephone and notified him that the deed had been taken by Mr. Greentaner and among other things testified in this language: " And [I] asked him to have the proper endorsements or notices — I don't know the terms — to have the proper assignments made to Mr. Greentaner of the insurance, and he said all right, it would be done, and he came over after that on that same day. And Mr. Lyman had the policies on the personal property, but I found that he didn't have the 3 policies on the real estate which was held by Mr. Sherwin, and Mr.

Sherwin said then that they were in Mr. Pearson's hands, out towards Pavilion, and he said, however, that he would have the transfers made and the slips could be delivered at any time to me afterwards." .

Mr. Kinsey on cross-examination was asked the questions and made answers thereto stated in the following: " Q. As I understand it you never applied to Mr. Sherwin for any paper slip that you have mentioned? A. Yes. Q. I mean you never went there and asked for it and he refused it to you? A. No, I told him I wanted it assigned and he said he would give it to me. Q. As I understand you, you expected to get some writing or some slip? A. Not necessarily. * * * Q. Yes, you stated that Mr. Sherwin said ' slips could be delivered to me? ' A. At any time if I wished, though. Q. You never asked for those other than as you have testified here? A. No, just as I have testified. Q. I mean there was no further request on your part of Mr. Sherwin or anybody else for these so-called slips? A. Only when he came over, as I have said, that he said it would be unnecessary to have the policy, that he would have the memorandum — Q. Why don't you answer my question? A. I will try to. Q. The question was whether you had ever made any further request for the delivery of the slips from Sherwin? A. When? At what time? Q. You have testified to a talk, as I understand, that took place in your office here, when he stated to you that slips could be delivered by him to you? A. Would be delivered by him to me. Q. There were none ever delivered, were there? A. No, not as to any of the companies. Q. And you never made a further demand? A. No."

The testimony of Sherwin was to the effect that the slip was not furnished because some other feature of the transaction had not been definitely arranged and by mutual understanding the matter was delayed.

These questions were put to Sherwin and he made these answers: " Q. Do you recollect of the time when we had the conversation about the policies, and I spoke to you about not having two or three of the policies which were in the possession of Mr. Pearson, that I found I didn't have them here, that they must be out there, and you spoke about that? A. Well, I don't particularly. I might have been

conscious of the fact that you didn't have them, unless you got them from Pearson in order to make this transfer and close it up.  Q. What I was getting at is, do you recollect the fact that I called your attention to the fact that the policy wasn't here, and under the written — A. At the time of the fire I told you that wasn't necessary.  I did tell you that, that it wasn't necessary to have the policies when the contract was made, I could hand in the slip.  Q. It wasn't necessary to have the policy and have the actual endorsement made on the policy?  A. That is right."

It appears that Sherwin & Sherwin ceased to be the agents of the defendant on the 6th day of August, 1915, but having insurance on this property as agents for other companies, they assumed to act in the premises by inadvertence.  The senior Sherwin testified that they had given no notice of a change in the agency and that it never occurred to him to do so.

It is conceded that the agency of Sherwin & Sherwin for the defendant authorized them to consent to the assignment of the interest of the insured in property covered by a policy like that in question.  It is common knowledge that such agents prepare slips for such consents and that such agents deliver such slips to the parties interested with instructions to attach them to policies.  This fact is fairly to be inferred from the testimony of Mr. Sherwin.

This policy contained the following:

" This Policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this Policy, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive any provision or condition of this Policy except such as by the terms of this Policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege

or permission affecting the insurance under this Policy exist or be claimed by the insured unless so written or attached."

On the back of such policy there are the following provisions:

" This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void   *   *   * if the interest of the insured be other than unconditional and sole ownership;   *   *   *   or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss."

Finding No. 7 is disapproved and the following substituted therefor:

" No. 7. That on the 1st day of November, 1915, said Solomon S. Lyman sold and conveyed by warranty deed to Joseph Greentaner, one of the plaintiffs, the premises upon which said livery barn covered by the insurance policy in question was situated; that Russell L. Kinsey, a counselor at law, had charge of the matter on behalf of the grantor and grantee; that upon the delivery of the deed, in response to a request of Kinsey, the senior member of said Sherwin & Sherwin conferred with Kinsey at his office regarding the matter of the consent of the defendant through such agency to the transfer of the said policy to Greentaner; that upon said occasion it appeared that the said policy was in the possession of said George Pearson, the mortgagee, who lived in a small place about eight miles distant from Batavia, whereupon said Sherwin said that it was not necessary to have the policy present, that no endorsement need be made upon the policy itself, that he would have the transfer made and that the slip could be delivered afterward to Kinsey, meaning thereby that Greentaner's said barn was insured for the time being and that the consent slip could be delivered to Kinsey and attached to the policy later; that in effect said Sherwin agreed on behalf of the defendant that the barn was insured for the benefit of Greentaner till the proper slip was attached to the policy."

Finding No. 9 is disapproved because it is wholly unsupported

by the evidence, and as a substitute for such finding the following finding is made:

" No. 9. That it does not appear that any consent slip for the transfer of the policy in question was ever prepared and it does appear that no such slip was attached to the said policy."

In finding No. 11 " 1915 " should be substituted for " 1916 " and the following should be stricken out: " twenty days after the transfer and consent as above stated."

I think that the preliminary parol agreement made by Sherwin & Sherwin to continue the policy in force was a valid agreement within the doctrine approved by the Court of Appeals in *Manchester* v. *Guardian Assurance Co.* (151 N. Y. 88, 92).

The defendant argues that as Sherwin & Sherwin had ceased to be agents of the defendant on the 6th day of August, 1915, and, therefore, had no authority to bind the defendant by any agreement made on the 1st day of November, 1915, Greentaner cannot succeed in this action.   Greentaner testified that he had no notice that Sherwin & Sherwin had ceased to be agents for the defendant.   I think that since Sherwin & Sherwin were the agents through whom the policy in question was issued and no notice had been given of the termination of their agency, their acts in the premises were binding upon the defendant.   The Sherwin fire insurance agency had existed in Batavia for more than forty years and was well known.   This agency had carried insurance on the property covered by the policy in suit for twenty years. Sherwin & Sherwin countersigned the policy and, in addition, their names appeared as agents upon the outside title thereof and in the various attachments thereto five times.   Such an agency once shown to exist is presumed to exist until the contrary appears.   It is true that Lyman, to whom the policy was issued, was not sworn and, therefore, did not testify that he had no information of the termination of the agency, but the burden of proof was upon the defendant to show that he had such information.   The burden of proof was also upon the defendant, not only to show that Sherwin & Sherwin had ceased to be the agents for the defendant, but that Greentaner had such information of the termination of the

agency as would be sufficient to give a person of ordinary prudence notice of such termination. (*Gragg* v. *Home Insurance Co. of New York*, 139 Ky. 472; 2 Joyce Ins. [2d ed.] § 721.)

It is claimed by the defendant that there is no evidence in the record that the policy in question was ever assigned by Lyman to Greentaner. It is true that no written assignment thereof appears in the evidence but I am of opinion that the assignment of the policy need not have been in writing. The policy was produced by the plaintiffs and put in evidence by them upon the trial and from this we may infer that it had been transferred.

It follows from the foregoing that the judgment appealed from must be affirmed, with costs.

All concurred, except FOOTE, J., who dissented in a memorandum; HUBBS, J., not sitting.

FOOTE, J. (dissenting):

I dissent and vote for reversal and a new trial.

Concededly, Sherwin was not the agent of the defendant on November 1, 1915, at the time of the transaction by which the defendant company has been held bound. The theory upon which this has been done is that he was a former agent and as such issued the policy and neither he nor the company gave any notice to the plaintiff Greentaner of the termination of his agency. It is plain that Sherwin had no intention of acting for the defendant at the time because, as he says, he was not aware or had forgotten that the defendant had a policy on this particular property, so that in all that he did and said he supposed he was speaking for the other companies which he represented which did have such policies.

Now, the question is whether the company is bound by the acts and promises of Sherwin because neither Greentaner nor his attorney Kinsey had been notified of the termination of the agency. The policy was issued to Lyman, the former owner. If the company owed a duty to give notice to anybody it would be to Lyman or to the plaintiff Pearson, the mortgagee, who had the custody of the policy. Nowhere in the record does it appear that both Lyman and Pearson

did not have notice of the termination of the agency. Kinsey, the lawyer, did not represent Lyman. He says: " I represented Mr. Greentaner and Mr. Smith in the matter." It is true that Sherwin says when asked whether Kinsey was acting for Greentaner or Lyman: " Well, I think perhaps for both of them. Lyman was here, and I think Mr. Kinsey was acting — and my impression at that time was that he was acting between them. Q. You had no knowledge—? A. I have no knowledge. Q. Excepting that he was acting for somebody? A. I saw Lyman here, either on my first or second call, while the trade was in course of negotiations." This is all the testimony in the record on this subject, and it seems to me that it hardly supports the finding that Kinsey, the lawyer, was authorized to and did undertake to represent Lyman in reference to the insurance policies or anything else.

It was not plaintiffs' position at the trial that the company was liable because it had not notified Lyman or Pearson of the termination of Sherwin's agency, but because plaintiff Greentaner had had no such notice. It appears from a question put to Sherwin by Kinsey: " Q. You in no way indicated to me or to any one in behalf of the assignees of the property that the agency had been changed? " And he answered, " I did not. It never occurred to me. I didn't know that the Connecticut was involved in the fire."

When Greentaner and his lawyer undertook to deal with Sherwin in reference to a policy with the Connecticut Fire Insurance Company, they should have ascertained whether he was its agent. They had never dealt with him before as its agent, and I do not see how the company was estopped from denying the agency because Greentaner and his lawyer learned from some source, or assumed, that he was agent, or even if Sherwin himself told him that he was.

Judgment affirmed, with costs.